BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, PLAINTIFF-APPELLANT, v. B & L TAVERN, INC., AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued March 16, 1964—Decided April 20, 1964.

*Mr. William Rubin* argued the cause for plaintiff-appellant (*Mr. Nathan Zinader,* attorney).

*Mr. Raphael G. Jacobs* argued the cause for defendant-respondent B & L Tavern, Inc. (*Mr. Harold H. Fisher,* of counsel).

*Mr. Samuel B. Helfand,* Deputy Attorney General of New Jersey, argued the cause for defendant-respondent Division of Alcoholic Beverage Control (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered

Per Curiam. Since 1958 B & L Tavern, Inc. has operated a tavern at 477 Avenue C, Bayonne, New Jersey. Max Baer, its president, holds 80% of the stock, his wife and sister the remaining 20%. Baer individually owns the two-story building, the first floor of which is rented to the tavern. For some years prior to January 29, 1961 the second floor was rented to the Midtown Social and Athletic Club. The nature of this club's activities is rather obscure. The B & L Tavern, Inc. held a plenary retail consumption alcoholic beverage license from 1950 on. It was renewed annually as of July 1 of each year down to June 30, 1961 when the present renewal application was made. During the intervening years the license was continued regularly without objection from neighbors or local authorities. And no disciplinary proceedings of any kind were ever instituted against the tavern.

On January 29, 1961 the building burned down and when Baer began to rebuild, a petition of opposition to the tavern was filed with the Bayonne City Clerk by a number of residents of the neighborhood. When application was made for the July 1, 1961 renewal of the license, a group of such residents objected. Public hearings were conducted by the governing body of the city at the conclusion of which renewal was denied on the very general ground that the tavern "is the scene of constant disorder and noise and * * * a renewal of the plenary consumption license * * * is not in the interests of the City of Bayonne and this Board is further of the opinion that the same cannot be conducted without being a nuisance in the neighborhood." No specific factual findings were recited in support of the conclusion.

Appeal was taken to the Division of Alcoholic Beverage Control where, under the pertinent regulation, a *de novo* hearing was held. Some witnesses who did not testify in the original proceeding were produced and some who had appeared earlier did not return on this occasion. It is plain from the record, also, that although Baer's new building had been completed, the tavern was not then in operation.

Considerable testimony on both sides of the controversy was adduced before the Division's hearer. Most of the criticism had to do with conditions said to exist outside the tavern itself, on the public sidewalk in the immediate area and along the side of, and in the rear of, the old building. It was alleged that men standing outside of and near the tavern made suggestive remarks to passing women, that so-called "winos" congregated around the tavern, sitting on a ledge which ran along the side of the old building, that people were seen parked in automobiles nearby and drinking out of bottles and that immoral conduct had been engaged in in and around the premises. Testimony was offered also to show that empty bottles and other debris were thrown or dropped in the rear yard of the place and that loud noises and cursing could be heard from the open windows in the warm weather.

There was considerable conflict in the testimony as to the extent to which the alleged conditions outside of the building and in the vicinity could be charged to operation of the tavern. Some of the objectors' statements were clearly exaggerated and others were incredible. Moreover, there were other taverns and liquor stores in the area and that they contributed to whatever conditions in fact existed was a reasonable inference.

Baer's testimony disclosed that erection of the new building removed the ledge on which the "winos" sat, and the remainder of the premises is walled in so as to eliminate the unsightly conditions in the rear yard. He said also that the tavern is now air-conditioned thus preventing, in large measure, noise emanating from the windows.

The Director obviously was impressed with the fact that over the considerable number of years B & L Tavern, Inc. had held the license, no formal complaint had ever been filed or disciplinary action urged or taken. In addition, he recognized the weakness in the proof to connect the tavern with many of the unfavorable conditions existing outside the premises on the public street. And, finally, he was influenced plainly by the change for the better caused by the new building and other

physical improvements. As a result, he found lack of justification for the local Board's refusal to renew the license and reversed the order. In the course of doing so, he suggested that the local supervision in the area might be more exacting, and also that the tavern operator could "show the sincerity of his intentions to live at peace with his neighbors" by refraining from renting the second floor of the new building to the social club. However, such condition was not imposed by his order of reversal.

The Board of Commissioners then sought a review in the Appellate Division which, after an exhaustive study of the evidence, sustained the Director by majority vote. The affirmance was made subject to the condition that Baer does not rent the second floor for use as a social club. The dissent in the Appellate Division resulted in this further appeal to us. *R. R.* 1:2–1(b).

Our examination of the record reveals substantial evidence in support of the Director's conclusion, as well as that of the majority of the Appellate Division. Although it cannot be denied that certain unfavorable conditions were an incident of the operation of the tavern both inside and outside, we are satisfied the findings below were not unwarranted. Of considerable influence in that connection is the marked improvement in the physical condition of the premises. Moreover, during oral argument our inquiry revealed that although the tavern has been in operation in the new building for over a year and a half, not a single complaint has been registered against it.

The judgment of the Appellate Division is affirmed subject to the condition imposed thereby with respect to rental of the second floor of the tavern building.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.